# In the United States Court of Federal Claims

No. 25-107
(Filed: 4 August 2026)

| | |
|---|---|
| GOVERNMENT ACQUISITIONS, INC, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

*Timothy B. Hyland*, of Hyland Law PLLC, of Reston, VA for plaintiff.

*B. Steven Kushnir*, Senior Trial Counsel, Commercial Litigation Branch, with whom were *Yaakov M. Roth,* Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Martin F. Hockey*, Deputy Director, U.S. Department of Justice, of Washington, DC, and *James E. Vaiden*, Assistant Counsel, U.S. Navy Fleet Logistics Center.

## OPINION AND ORDER

**HOLTE, Judge.**

*Caveat manceps rei publicae.*[1]

This case presents yet another instance where a plaintiff challenges the government's conduct related to a contract to no avail. In response to the Navy's Request for Quotation for Palo Alto Networks software licenses, plaintiff Government Acquisitions, Inc. submitted a Quote structured using one base year with four option years—these option years allowed the Navy to secure favorable pricing for the software licenses without obligating itself to continue paying for the software when it became unnecessary the following year. Plaintiff's Quote specified, however, "Provided it obtains such sufficient funds, the Government shall exercise all renewal options." Plaintiff insists the Contract executed between plaintiff and the Navy incorporated the terms from its Quote to the Navy—including this obligation to "exercise all renewal options" for additional years if the government received requisite funding. Plaintiff now challenges the Navy's decision not to exercise option years to extend plaintiff's contract for software licensing and support beyond one year despite the obligation in plaintiff's Quote. In the absence of express language incorporating plaintiff's Quote into the Contract, the Quote's terms offer

[1] "Let the contractor for the government beware."

plaintiff no sockdolager[2] here. For the following reasons, the Court grants the government's Motion to Dismiss for Failure to State a Claim.

## I. Background

### A. Factual History

In April 2023, the Navy Fleet Logistics Center ("the Navy") issued a request for quotations ("RFQ") for licenses to use a software developed by Palo Alto Networks. Gov't's Mot. to Dismiss ("Gov't's MTD") at 2, ECF No. 9. On 26 May 2023, plaintiff responded with a Quote proposing a contract with one base year and four option years. *Id.* The Quote comprised terms and conditions, which included this term:

> Please include the following statement in the gov't order to GAI:
>
> "Government Acquisitions, Inc. Quote No. 152862 dated 5/26/23 is hereby incorporated into this delivery order and made a part hereof."

Compl., Ex. 2 (Plaintiff's Quote) at 3, ECF No. 1-2. The Quote further provided:

> The Government has an option to renew this order beyond the initial fiscal year and is obliged to use its best efforts annually to obtain sufficient funds from appropriated and other legally available sources to do so until completion of the order. Provided it obtains such sufficient funds, *the Government shall exercise all renewal options*. In the event the Government fails to exercise its option to renew this order or fails to use its best efforts to seek and obtain appropriations to support this order in any subsequent fiscal year but expends funds for the functions which the Software was procured to perform, then the Government will be deemed to have had funds available to support this order. In the event this order is terminated, non-renewed or otherwise discontinued prior to the Software being fully implemented, installed and in use by the Government, such termination, non-renewal, or discontinuance shall be deemed a termination for convenience. The rights of the Government to terminate shall apply to the entire delivery order, including any renewals thereof and not allow partial termination of the Software.

*Id.* (emphasis added).

On 13 June 2023, the Navy offered plaintiff a proposed delivery order on Standard Form 1449, which plaintiff executed the same day. Compl. ¶ 8, ECF No. 1; *see* Compl., Ex. 3 (Award Offer), ECF No. 1-3. The delivery order did not include the statements requested by the Quote. *See* Compl., Ex. 3. Box 29 of the delivery order—which describes the "Award of Contract"—reads in full: "Offer dated 18-May-2023. Your offer on solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items: see

[2] The Court utilizes "sockdolager" in the same manner as used in *Northrop Grumman Comp. Sys., Inc. v. United States*, 93 Fed. Cl. 144 (2010), cited *infra*. Sockdolager: "A final blow or remark; something outstanding." *Sockdolager*, The American Heritage College Dictionary (3d ed. 1997).

schedule." *Id.* at 1. The delivery order, however, did not define "schedule." *See id.* After plaintiff noticed the 13 June proposed delivery order contained a typographical error—it noted an offer date of 18 May 2023 when the Quote was actually dated 26 May 2023—plaintiffs contacted the government to fix the error. *See* Compl. ¶ 8; Compl., Ex. 2 (Plaintiff's Quote) at 2; Compl., Ex. 4 (Corrected Draft Delivery Order) at 2.

Also on 13 June 2023, the government issued a modification to the delivery order, *see* Compl., Ex. 5 (Contract Modification), to alter the language in Box 29 to clearly reference plaintiff's Quote with, and then issued a revised delivery order, *see* Compl., Ex. 4. The modification stated "the purpose of this modification is to change block 29 on the SF-1449 award to 'Quote No. 152862-1-1 OFFER DATED 26-May-2023." Compl., Ex. 5 (Contract Modification). Plaintiff signed the modification on 14 June 2026. *Id.*

The Contract[3] further included a plethora of attached pages which specified the software to be provided, outlined the structure of the base and option years, and incorporated by either reference or full text many provisions of the Federal Acquisition Regulations ("FAR"). *See* Compl., Ex. 3 at 3–37. Among its full-text incorporations, the Contract included FAR 52.217-7, titled "Option for Increased Quantity-Separately Priced Line Item." *Id.* at 16. The provision reads, in part, "The government may require delivery of the separately numbered item identified in the schedule as an option item, in the quantity and at the price stated in the schedule." *Id.* at 17 (quoting FAR 52.217-7). Box 27b of the Contract also incorporates FAR 52.212-4, which in subsection (l) states "The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience." *Id.* at 1; FAR 52.212-4.

Plaintiff then provided the software licenses to the Navy for the base year, and Navy paid the initial base term payment. Compl. ¶¶ 18–19; Gov't's MTD at 4. Shortly after plaintiff delivered the software on 23 June 2023, the government gave plaintiff a Certificate of Acceptance which stated the software was properly delivered according to "Contract No. NNG15SD23B, including Quote #152862-1-1 dated May 26, 2023." Pl.'s Resp., Ex. A, ECF No. 12-1. On 24 February 2024, the Navy emailed plaintiff a preliminary notice it intended to exercise the first option year. Compl. ¶ 20. The notice advised it "shall not be deemed to commit the Government to this renewal" and "[o]nly the Contracting Officer has the authority to exercise the option by issuing a modification to the contract in the upcoming future." *Id.* On 29 July 2024—a month after the base year ended—the Navy told plaintiff it was not going to exercise the option year. *Id.* ¶ 21. Plaintiff alleges the Navy then used a different version of the software not procured from plaintiff. *See id.* ¶ 26.

### B. Procedural History

[3] The Court notes two observations. *First*, plaintiff's Exhibit 6 is identical to its Exhibit 3. While plaintiff alleges Exhibit 6 is an Award Delivery Order executed *after* the correction of Box 29 on 14 June 2023, the Court notes Exhibit 6 was executed on 13 June 2023. *Second*, while plaintiff states the Contract was formed only after it signed the version of the delivery order with Box 29 corrected and the government asserts the original delivery order signed 13 June 2023 formed the Contract, both parties do not dispute the Contract as comprising the delivery order signed on 13 June 2023, in view of the 14 June 2023 Contract Modification. *See generally* Gov't's MTD at 2–3; Pl.'s Resp. to Gov't's MTD ("Pl.'s Resp.") at 7, ECF No. 12. Notwithstanding this dispute, the Court notes "the Contract" refers to the version of the delivery order with Box 29 corrected.

On 10 September 2024, plaintiff filed a claim with the contracting officer seeking damages. *Id.* ¶ 31. The contracting officer denied plaintiff's claim on 4 November 2024. *Id.* ¶ 32; Compl., Ex. 9. On 21 January 2025, plaintiff filed its Complaint in this Court. *See* Compl. The government filed a motion to dismiss for failure to state a claim on 2 June 2025, and plaintiff filed its Response in Opposition on 3 July 2025. *See* Gov't's MTD; Pl.'s Resp., ECF No. 12. The government filed a Reply in Support of its Motion to Dismiss. Gov't's Reply, ECF No. 14. The Court held oral argument on the government's motion on 14 February 2026. *See* Order Scheduling Oral Argument, ECF No. 15.

## II. Parties' Arguments

The government moved to dismiss for failure to state a claim related to all counts asserted in plaintiff's Complaint. *See* Gov't's MTD. First, the Court reviews the parties' arguments related to Counts 1–3, where plaintiff alleges a breach of express terms of the Contract. *Id.* at 6. Then, the Court summarizes the parties' arguments related to Count 4, where plaintiff alleges, notwithstanding the breach of express terms of the contract, the government also breached the implied duty of good faith and fair dealing. *Id.* at 15. Finally, the Court provides a synopsis of the parties' arguments related to Counts 5–7, which concern three doctrines plaintiff relies on to show it was harmed by the government's conduct and is thus entitled to damages or equitable relief. *Id.* at 18–20.

### A. Counts 1, 2, and 3 for Breach of the Express Terms of the Contract

The government's primary argument is it could not have obligated itself to exercise the option years in the contract because the Anti-Deficiency Act ("ADA") bars it from obligating money before Congress has appropriated the money for that purpose. Gov't's Reply at 2. Further, the government argues plaintiff's Quote, which contained the terms and conditions purporting to limit the government's discretion regarding the option years of the contract, was not incorporated into the Contract. Gov't's MTD at 12–15. Therefore, the government argues, it never had any obligation to exercise the option years in the contract because the Contract itself only provided for the base year and option years and any obligation to exercise additional years was only present in plaintiff's unincorporated Quote. Gov't's Reply at 11–12. Plaintiff argues even if the ADA applies, the Contract does not violate it because the government can enter contracts for multiple years where: (1) there is "an appropriation available to fund the contract," and (2) "the government must be able to affirmatively continue the contract for each subsequent year." Pl.'s Resp. at 16. Plaintiff further argues its offer on the Contract "was expressly conditioned upon including" language stating "[p]rovided it obtains such sufficient funds, the Government shall exercise all renewal options." *Id.* at 22–23. Plaintiff argues the terms and conditions attached to its Quote were incorporated into the contract by the language in Box 29 of the Contract. *Id.* at 25–26. Specifically, plaintiff asserts Box 29 of the Contract states plaintiff's offer is "accepted as to items: See Schedule," and argues "[t]he referenced Schedule – which the Government acknowledged that it 'ACCEPTED,' was comprised of the pages attached to the standard form 1449, as well as the entire listed offering, including terms and conditions, contained in the Quote." *Id.* at 25. In the alternative, plaintiff argues the contract "is ambiguous

and susceptible to multiple interpretations" as to whether the obligation to exercise options was incorporated into the contract. *Id.* at 28.

### B. Count 4 for Breach of Implied Duty of Good Faith and Fair Dealing

Additionally, the government claims it did not violate the implied duty of good faith and fair dealing, saying the duty "cannot expand [its] contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." Gov't's MTD at 16 (citing *Precision Pine & Timber, Inc. v. United States*¸ 596 F.3d 817, 831 (Fed. Cir. 2010)). The government maintains the Contract's use of permissive language—referring to exercising the options and incorporating FAR provisions giving the Navy sole discretion to exercise the options—means its conduct was contemplated by the written contract and plaintiff "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits." *Id.* at 16–17. Plaintiff responds it "alleged that the Navy entered into, and induced [plaintiff] into affording it favorable terms under, the Contract by representing that 'No other brand or product on the market today will meet [the Navy's] needs' and that '[n]o competitive functional replacement product exists in the market at this time to meet the Government's needs' – statements were false and known by Navy to be false when made, since it already had identified the Replacement Software, and it was different software from a different licensor." Pl.'s Resp. at 33 (citations omitted). Plaintiff disputes the Contract is "automatically void under the ADA," and the government's representations "the Quote and its payment terms were incorporated in the Contract" and argues subsequent repudiation by failing to exercise the option years violated the implied duty. *Id.* at 34–35.

### C. Counts 5, 6, and 7 for Superior Knowledge, Constructive Termination for Convenience, and Equitable Adjustment

The government further contends the superior knowledge doctrine is inapplicable in this case, as the alleged "superior knowledge"—referring to plaintiff's claim the government knew it was going to replace the software after one year of the contract—could not have been "vital" to plaintiff's performance because the contract was a one-year contract with four option years. Gov't's MTD at 18. Plaintiff argues it has sufficiently alleged a breach of the superior knowledge covenant because it alleged "the Navy concealed the fact that at the time of contracting it already had identified and mandated the acquisition" of software elsewhere. *Id.* at 36 (citing Compl. ¶ 62). "Had [plaintiff] known this information," plaintiff argues, it "would not have contracted to provide Navy with the Software payable at steep discounts over multiple years with nonrenewal risk." *Id.* (citing Compl. ¶ 63).

The government further argues plaintiff's allegation of constructive termination for convenience is inapplicable because the contract did not require the government to exercise option years. Gov't's MTD at 19. While termination requires "an affirmative act by the procuring agency to stop future performance," the "[g]overnment is not alleged to have stopped GAI from performing any contractual obligations; it simply allowed the Contract to lapse by declining to extend it beyond the base year." *Id.* Plaintiff argues it sufficiently alleged a claim for "constructive termination for convenience" because "the failure to exercise any of the option years could be properly classified as a constructive termination for convenience." Pl.'s Resp. at

37. Plaintiff argues "[b]y failing to renew the option years, the Navy's conduct ran counter to the plain meaning of the Contract and the terms" requiring the Navy to exercise option years where it obtains sufficient funds. *Id.*

Lastly, the government argues plaintiff is not entitled to an equitable adjustment for two reasons. First, plaintiff's theory of liability "is . . . based on the assumption that the Contract required the Government to exercise option years, which is incorrect." Gov't's MTD at 20. Second, "the equitable adjustment clause incorporated by reference into the Contract, FAR 252.243-7002, permits equitable adjustments only when a change mandated by the procuring agency causes the contractor to incur additional costs." *Id.* (cleaned up). Here, the government argues, "the Navy made no changes to the Contract's requirements, which provided only for a 12-month base period of performance." *Id.* Plaintiff did not respond to this argument in its response. *See generally* Pl.'s Resp.

## III. Applicable Law

Under the Rules of the Court of Federal Claims ("RCFC") 12(b)(6), a plaintiff's claim must be dismissed when the facts pled do not entitle them to a legal remedy. *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). If a plaintiff alleges the violation of a contractual duty, damages may be recovered. *Id.* at 960. One exemption relevant to alleged breaches of government contracts is the Anti-Deficiency Act, which prevents agents of the United States from contractually obligating the government to pay an amount in a contract beyond what is appropriated by Congress. *Hercules Inc. v. United States*, 516 U.S. 417, 427 (1996); *see also* 31 U.S.C. § 1341 ("An officer or employee of the United States Government . . . may not[] (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; (B) involve [the] government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law."). Accordingly, if an appropriation has not yet been made or an expenditure calls for more money than has been appropriated, the ADA releases the government from liability. *See id.*

## IV. Whether Plaintiff's Quote Requiring the Government to Exercise all Option Years is Incorporated into the Contract

The Court starts with Counts 1–3 of plaintiff's Complaint, alleging a breach of express contractual terms given the government did not exercise all option years. Though the Contract itself did not require the government to exercise the four option years, plaintiff argues its Quote—which stated "the Government shall exercise all renewal options"—is incorporated by

reference into the Contract.[4] Given this obligation, and because the government did not exercise the option years, plaintiff contends the government expressly breached the Contract.

At oral argument plaintiff agreed for Counts 1–3 of its Complaint to survive the government's Motion, "the [C]ourt would have to find that [plaintiff's] [Q]uote was binding and incorporated into the contract." 18 February 2026 Oral Arg. Tr. ("Tr.") at 66:20–24, ECF No. 17. As a result, the Court first considers whether the Contract expressly incorporated by reference plaintiff's Quote through the language in Box 29 (which detailed the Award of Contract) or the Certificate of Acceptance. Second, the Court examines whether incorporating plaintiff's Quote to make the additional years mandatory conflicts with the Contract's characterization of the additional years as options. Third, the Court analyzes whether the FAR provisions expressly incorporated into the contract support the additional years as mandatory or optional. Fourth, and finally, the Court considers whether the Contract terms are ambiguous, and if yes, whether plaintiff may introduce additional evidence of intent to incorporate plaintiff's Quote in the Contract.

### A. Whether the Contract Expressly Incorporates by Reference Plaintiff's Quote Terms into the Contract

The Court first considers whether the Contract incorporates plaintiff's Quote terms into the Contract. Plaintiff argues Box 29's statement "your offer . . . is accepted as to items: see schedule" expressly incorporates the Quote terms because the "schedule" includes the "entire listed offering, including terms and conditions, contained in the Quote." Pl.'s Resp. at 25. Alternatively, plaintiff argues the Certificate of Acceptance given to plaintiff on 23 June 2023 states the quote is "included" in the Contract. *Id.* at 25–26. The government asserts Box 29 could not incorporate the Quote into the contract because it neither "explicitly" identifies the quote nor "clearly communicates" an intent to incorporate it. Gov't's MTD at 13–14.

"'[C]ontract interpretation begins with the language of the written agreement.'" *Beacon Point Assocs. LLC v. Dep't of Vet. Affairs*, 139 F.4th 1306, 1309 (Fed. Cir. 2025) (quoting *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)). "'To incorporate material by reference, "the incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract."'" *Id.* (quoting *CSI Aviation, Inc. v. Dep't of Homeland Sec.*, 31 F.4th 1349, 1355 (Fed. Cir. 2022) (further quoting *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008))). "Thus, to incorporate extrinsic material by reference, a contract (1) 'must explicitly, or at least precisely, identify the written material being incorporated and [(2)] must

[4] As discussed *supra*, on 13 June 2023, the parties originally executed a Contract which, in Box 29 (detailing the Award of Contract), specified an "offer dated 18 May 2023" without referencing plaintiff's Quote. *See* Compl., Ex. 6 at 2 (the Contract); *see* Tr. at 6:5–7:1. Realizing the offer date was incorrect, the parties executed a contract modification the next day to alter Box 29 to specify the correct Quote date and include plaintiff's Quote number. *See* Compl., Ex. 5 at 2 (14 June Contract Modification). Only Box 29 was affected by the 14 June modification. *See* Compl., Ex. 5 at 2; Tr. at 7:22–8:2. The parties did not sign a revised version of the Contract, and proceeded under the 13 June 2023 Contract as modified by the 14 June modification.

clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'" *Id.* (quoting *Northrop*, 535 F.3d at 1345).

As Box 29 is the only location in the Contract where plaintiff's Quote is mentioned, the Court begins by reviewing the language of Box 29. As modified, Box 29 states, in full:

> 29. AWARD OF CONTRACT REF. Quote No. 152862-1-1 OFFER DATED 26-May-2023. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: SEE SCHEDULE.

Compl., Ex. 6 (the Contract) at 1, Ex. 5 (Contract Modification) at 1. The Contract in Box 29 *does* explicitly identify the Quote by stating the Quote number, but Box 29 does not "clearly communicate" an intent to incorporate anything into the Contract and introduces "reasonable doubt about the fact that the referenced document is being incorporated into the contract." *See Beacon Point*, 139 F.4th at 1309. Specifically, Box 29's bare reference to plaintiff's Quote does not state the quote is incorporated into the Contract, nor does it include language demonstrating "the purpose of the reference is to incorporate the referenced material." *Id.* In contrast, in Box 27, lines 27a and 27b *both* state they "incorporate by reference FAR 52.12-4." Compl., Ex. 6 (the Contract) at 1, Ex. 5 (Contract Modification) at 1. As another example, pages 9 to 16 of the Contract enumerate "clauses incorporated by reference" and "clauses incorporated by full text." *See* Compl., Ex. 6 (the Contract) at 9–16. While Box 27 and numerous pages of the Contract clearly communicate an intent to incorporate FAR provisions into the Contract, there is no language in Box 29 explicitly incorporating plaintiff's Quote or demonstrating an intent to do so. Although plaintiffs correctly argue "magic words" are not required for incorporation by reference, Tr. at 57:16–23, "a contract must use clear and express language of incorporation," *Beacon Point*, 139 F.4th at 1309. Considering Box 29 is the only location where the Quote is mentioned, and because there is no "clear and express language" incorporating the terms of the Quote into the Contract, Box 29 does not explicitly incorporate by reference the terms of plaintiff's Quote—including the government's requirement to exercise all renewal options—into the Contract. *See Beacon Point*, 139 F.4th at 1309.

Plaintiff also relies on Box 29 to state the "schedule" referred therein also incorporates plaintiff's Quote. Box 29 concludes plaintiff's offer is "accepted . . . as to items: *see schedule*." Compl., Ex. 6 (the Contract) at 1, Ex. 5 (Contract Modification) at 2 (emphasis added). The "schedule" referenced in Box 29 is the additional pages attached to the Standard Form 1449 contract. *See* Compl., Ex. 6 (the Contract) at 3–36. These additional pages include columns of information listing items, quantities, pricing, and delivery dates concerning plaintiff's delivery schedule—comporting with the Contract's description of a "*schedule* of supplies/services" in Box 20 and Box 20's own reference to a "schedule" on the Contract form. *See id.* at 1–2. While plaintiff agrees Box 29's reference to a "schedule" at least includes the pages attached to the Contract, plaintiff insists "schedule" also includes plaintiff's Quote. *See* Tr. at 42:20–42:24 ("THE COURT: You agree that the 'schedule' is the following pages, the attachments to the contract? [PLAINTIFF]: I think the schedule is the pages that follow and whatever is incorporated into it, which would include the quote."). Plaintiff's Quote, unlike the schedule of supplies/services, is not attached to the Contract, and there is no further reference to plaintiff's

Quote outside Box 29. *See* Compl., Ex. 6 (the Contract). While plaintiff agrees there is no statement in the Contract specifically incorporating plaintiff's Quote, *see* Tr. at 59:7–60:16, plaintiff argues the "schedule" actually includes "the entire listed offering," including plaintiff's Quote, *see* Pl.'s Resp. at 25. Plaintiff, however, cites nothing in support of this expansive definition of "schedule." *See id.* Specifically, plaintiff asserted "[t]here's nothing that defines the schedule, but . . . certainly, there is a schedule attached to the delivery order." Tr. at 14:20–25. Given there is no definition for schedule, and because the Quote was not attached to the delivery order (contrary to plaintiff's assertion the schedule is attached to the delivery order), the schedule did not incorporate by reference plaintiff's Quote. Accordingly, in the absence of language "clearly communicat[ing] that the purpose of the reference" to plaintiff's Quote in Box 29 is "to incorporate the referenced material," Box 29's reference to the schedule could not have incorporated the terms and conditions found in plaintiff's Quote into the contract. *Beacon Point*, 139 F.4th at 1309.

Plaintiff further argues Box 29's statement plaintiff's "offer . . . is accepted" necessarily means the terms and conditions contained in the quote were accepted and made a part of the Contract. *See* Pl.'s Resp. at 7. Although Box 29 states plaintiff's "*offer* on Solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items: see schedule," the FAR and the Contract itself clarify plaintiff's Quote does not constitute an offer. *See* Compl., Ex. 5 (Contract Modification) at 1, Ex. 6 (the Contract) at 1. *First*, FAR 13.004(a) declares a plaintiff's "quotation is not an offer and, consequently, cannot be accepted by the Government to form a binding contract." FAR 13.004(a). Rather, an "order is an offer *by the Government* to the supplier to buy certain supplies or services upon specified terms and conditions" and "[a] contract is established when the supplier accepts the offer." *Id.* The government, therefore, could not have simply accepted plaintiff's Quote as an offer outright; rather, in response to plaintiff's Quote, the government made an offer to plaintiff that plaintiff then accepted. *See id.* *Second*, even if the government could have simply accepted plaintiff's Quote, Box 29 clarifies an offer is accepted "as to items" and "including any additions or changes which are set forth herein." Compl., Ex. 6 (the Contract) at 1; Compl., Ex. 5 (Contract Modification) at 1. To the extent the government could accept plaintiff's Quote, by accepting it including any other terms set forth and only "as to items: see schedule," the government only accepted plaintiff's Quote insofar as it was reflected by the terms contained within the Contract and attached schedule. In either case, the result is the only agreement the government entered into was for the services according to the terms specified by the Contract itself, and those from plaintiff's Quote.

In addition to arguing Box 29 of the Contract incorporates plaintiff's Quote, plaintiff asserts the Certificate of Acceptance given to plaintiff upon the government's acceptance of the software delivery "explicitly confirms that the Quote is part of the Contract." Pl.'s Resp. at 23. The Certificate of Acceptance was signed on 23 June 2023 to confirm the software was delivered and accepted, and it included the following language:

> Certificate of Acceptance related to Order No. N0018923F0521 dated June 13, 2023 and Amendment/Modification dated June 13, 2023 with identifying Modification Control Number: nnzjdh042310606 each issued by NAVSUP FLC Norfolk Contracting to Government Acquisitions, Inc. ("Contractor") for use by

> Navy Information Operations Command ("User") pursuant to Contract No. NNG15SD23B, *including Quote #152862-1-1 dated May 26, 2023* . . . .

Pl.'s Resp., Ex. A at 1 (emphasis added). According to plaintiff, the reference to the Contract as "including" the 26 May Quote is sufficient to confirm the Quote was incorporated into the Contract. *See* Pl.'s Resp. at 23.

Plaintiff's argument is wrong for two reasons. *First*, the Certificate of Acceptance is not a part of the Contract—the Certificate merely confirms the Navy's receipt of goods from plaintiff and was created *after* the software was delivered in performance of the Contract. Moreover, while the Contract was signed on 13 June 2023 (then modified on 14 June 2023), *see* Compl., Ex. 5 (Contract Modification) at 1, Ex. 6 (the Contract) at 1, the Certificate of Acceptance was signed 10 days later on 23 June 2023, *see* Pl.'s Resp., Ex. A at 1. Although plaintiff insisted at oral argument it is "hornbook law . . . documents that are *executed* in close proximity in time with respect to the same subject matter, all comprise the same contract," Tr. at 62:17–20, plaintiff's counsel was "not prepared" to cite any hornbooks or cases to this effect at oral argument, nor did any appear in the briefing, Tr. at 61:6–14. Critically, while the Contract was signed by a representative of plaintiff *and* the contracting officer, the Certificate was signed only by a Chief Warrant Officer grade 4 in the Navy, so the Certificate of Acceptance was not executed by both parties, belying plaintiff's assertion the Certificate comprises part of the Contract. Compl., Ex. 5 (Contract Modification) at 1, Ex. 6 (the Contract) at 1; Tr. at 62:17–20. Plaintiff cites no authority to include the Certificate of Acceptance into the Court's interpretation of the Contract, and the Federal Circuit has consistently stated incorporation requires "the language of the *contract*" to expressly and unambiguously incorporate material by reference, not "extrinsic evidence." *Beacon Point*, 139 F.4th at 1339; *see also Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008) ("[T]he *incorporating contract* must use language that is *express* and *clear*, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract.") (first emphasis added). *Second*, even if the Certificate was construed to be part of the Contract, there is no language in the Certificate "clearly communicat[ing] that the purpose of the reference is to incorporate the referenced material into the contract," and raises "reasonable doubt about the fact that the referenced document is being incorporated into the contract." *Beacon Point*, 139 F.4th at 1309. Without language in the Contract (or the Certificate of Acceptance) clearly and unambiguously demonstrating intent to incorporate specific material by reference, and without any precedent or record evidence showing the Certificate of Acceptance should be considered part of the Contract, plaintiff cannot enforce any provision of its Quote's terms and conditions which does not independently appear in the Contract it signed with the government. *See Beacon Point*, 139 F.4th at 1310 ("If [plaintiff] intended to vary the terms of these FAR clauses by incorporating its Quote's terms and conditions into the contract, it should have ensured that the contract expressly identified that the Quote's terms and conditions were incorporated into the contract.").

### B. Whether the Contract Characterizes the Additional Performance Years as Optional or Required

The Court next examines whether the Contract characterizes the additional performance years as optional or required. Each performance year in the Contract is listed in the schedule of

supplies/services, and under the "ITEM NO" description for each performance year *except* the base year is marked "OPTION." Compl., Ex. 6 (the Contract) at 3–8. Further on, the Contract includes a Statement of Work which splits the "period of performance" into one base year running from June 2023 to June 2024, and four "option year[s]." *See id.* at 31. The Contract's "total award amount" in Box 26 also lists the award as "$1,104,569," which is the amount due for *only* the base year, not including the additional performance years marked "option." Compl., Ex. 6 (the Contract) at 1, 3 (listing base year amounts as $621,319.80 for software subscription and $483,249.20 for support services).

Plaintiff alleges "[t]he Contract obligated Navy to acquire the Software for a base year and four subsequent one-year *option* periods and, in accordance with that obligation, Navy agreed to make payments to [plaintiff] under the Contract over the four-year period, subject to appropriations." Compl. ¶ 12 (emphasis added). Plaintiff argues "the word 'option' does not necessarily connote and does not here connote absolute discretion and the ability to exercise or not exercise" the option. Tr. at 22:21–24; *see also* Pl.'s Resp. at 26 n.7 ("While the Government is correct that ordinarily the Government 'may' extend the term of a contract by exercising an option, in this case the Government 'must' exercise the options."). Plaintiff, however, agreed at oral argument "if the government has an option to renew the contract, then it is not required" and confirmed "[a]s a matter of course, an option is just that, discretionary." Tr. at 17:17–18:4. Looking to harmonize these conflicting statements, plaintiff insists the government may "cabin or curb" its discretion to exercise an option through contract provisions, relying on *Government Systems Advisors v. United States*, 847 F.2d 811, 813 (Fed. Cir. 1988). Tr. at 17:20–18:4, 31:10–33:14. In *Government Systems*, the Federal Circuit held a provision of a contract for data processing systems "plainly states that the contract is renewable at the option of the Government" and "nothing in [the contract] limited the circumstances under which the government could decline to exercise" the option. *Gov't Sys. Advs*., 847 F.2d at 813 (internal quotations omitted). Plaintiff argues the Federal Circuit's statement "nothing in [the contract] limited the circumstances under which the government could decline to exercise" the options in that case proves the government could limit its own ability to decline the option years here by contractual provision. Even assuming the government *could* limit its own discretion, however, the issue is whether the government *did* limit its discretion in the Contract. The Contract consistently refers to all years except the base year as options, and no specific provision on the Contract suggests any other interpretation than the government retained its discretion whether to exercise those options. Compl., Ex. 6 (the Contract) at 1 (noting total contract award is equal to the base year price), 3–8 (describing all years except the base year as "OPTION"), 31 (listing, as the period of performance in the Statement of Work, one base year followed by four option years); *see also Gov't Sys. Advs.*, 847 F.2d at 813 ("An option is normally an option, and nothing in [the contract] limited the circumstances under which the government could decline to exercise that bargained-for right in this case."). Accordingly, the Contract's consistent reference to the additional performance years as "options" reinforces the conclusion the government retained discretion whether to continue the Contract for the additional years. *See id.*

### C. Whether the FAR Provisions Expressly Incorporated into the Contract Support the Government's Discretion to Not Exercise the Additional Performance Years

The Court next examines the FAR provisions expressly incorporated into the Contract to determine whether they support the government's discretion to exercise the additional option years. Relevant to this case, the Contract incorporates by full text FAR 52.217-7, which states "[t]he Government may require the delivery of the numbered line item, identified in the schedule as an option item, in the quantity and at the price stated in the Schedule. The Contracting officer may exercise the option by written notice to the Contractor within 1 Day." Compl., Ex. 6 (the Contract) at 16–17 (quoting FAR 52.217-7). On its face, FAR 52.217-7 states a contracting officer "*may*" exercise an "option." *Id.* The FAR defines an "option" as "a unilateral right in a contract by which, for a specified time, the Government may elect to purchase additional supplies or services called for by the contract, or may elect to extend the term of the contract." FAR 2.101. FAR 52.217-7, therefore, confers discretion on the government to exercise an option, which is itself a unilaterally discretionary device. Plaintiff agreed at oral argument FAR 52.217-7 "gives the government discretion on whether to exercise the option years." Tr. at 19:8–11.

Plaintiff asserted at oral argument FAR 17.207(c)—which provides a list of elements and states "[t]he contracting officer may exercise options only after determining" the elements are met—demonstrates a contracting officer's decision to exercise an option is not made with absolute discretion because it provides a "checklist or the drill that the [contracting officer] has to go through when . . . exercising that option discretion." *See* Tr. at 19:8–25. Plaintiff is correct FAR 17.207(c) limits contracting officers' discretion, but only limits a contracting officers discretion to actually exercise an option. Plaintiff's argument, however, is the contracting officer *must* exercise the option, so FAR 17.207(c) does not support plaintiff because it specifies additional conditions for when an option *can* be exercised and is silent as to when it *must* be. Accordingly, the incorporation of FAR 52.217-7 supports the government's position the additional performance years were discretionary options. *See Beacon Point*, 139 F.4th at 1309 (holding "[t]he contract's expressly incorporated FAR clauses provided the agency with complete discretion in exercising the option years" and the options contained in the contract were thus not mandatory).

### D. Whether the Court May Consider Extrinsic Evidence to Support Plaintiff's Interpretation of the Contract if Box 29 is Ambiguous

The Court next determines whether the Contract is ambiguous as to whether plaintiff's quote is incorporated into the Contract, and if it is ambiguous, whether the Court may examine extrinsic evidence of the parties' intent when forming the contract to discern its meaning. Plaintiff argues "the Contract on its face is ambiguous and susceptible to multiple interpretations" because the Contract incorporates both FAR provisions giving the government discretion whether to exercise the options and plaintiff's Quote requiring the government to exercise those options. Pl.'s Resp. at 28. The government maintains the Contract is not ambiguous because the Contract expressly includes the FAR provision giving the government discretion, but does not incorporate plaintiff's Quote. Gov't's Reply at 12 n.6.

As an initial matter, plaintiff's ambiguity argument simply begs the question of whether the Contract incorporated plaintiff's Quote to require the government to exercise all additional performance years. Plaintiff's asserted ambiguity stems from a "conflict" between the

Contract's incorporation of FAR provisions giving the government discretion to exercise options, and the Contract's purported incorporation of plaintiff's Quote requiring the government to do so. *See* Pl.'s Resp. at 28. As the Court held *supra*, the Contract does not contain "clear and express language of incorporation" of plaintiff's Quote, and where the Contract does discuss the options, it consistently characterizes them as optional and discretionary. *See* Section IV.A–C, *supra*. As plaintiff's ambiguity argument requires a finding the Contract incorporated plaintiff's Quote in order to introduce a conflict between the FAR provisions and plaintiff's Quote, and because the Court found conversely, plaintiff's argument is unmeritorious: the Contract is not ambiguous.

Even if the Court were to find the Contract to be ambiguous, plaintiff agreed at oral argument the only provision requiring the government to exercise the options for additional performance years lies in plaintiff's Quote, not in the Contract itself, so incorporation of the Quote by reference is critical for plaintiff's claims. *See* Tr. at 68:5–10 ("THE COURT: If the Court were to find that the terms and conditions of the quote are not incorporated, is there any other language in the contract that you would argue obligates the government to exercise the option years? [PLAINTIFF]: Not in the contract itself, no."). As explained *supra*, incorporation by reference requires the Contract to "*unambiguously* communicate[]" the incorporation of material, and the Court "must consider the language of the contract, rather than extrinsic evidence, to determine whether there was a clear purpose to make the Quote part of the contract." *Beacon Point*, 139 F.4th at 1309 (emphasis added). If, as plaintiff claims, there is ambiguity in the Contract, that same ambiguity necessarily prevents the Court from finding the Contract "unambiguously communicates" intent to incorporate the terms and conditions within plaintiff's Quote. Accordingly, even if the Court were to find the Contract is ambiguous, it would prevent plaintiff's Quote terms from being incorporated, and the government would still be under no obligation to exercise the additional performance years. *See Beacon Point*, 139 F.4th at 1309.

Critically, the Federal Circuit's *Beacon Point* decision resolves the exact incorporation issue presented in this case, so the Federal Circuit's conclusion there applies equally to this case:

> The contract's expressly incorporated FAR clauses provided the agency with complete discretion in exercising the option years. If Beacon Point intended to vary the terms of these FAR clauses by incorporating its Quote's terms and conditions into the contract, it should have ensured that the contract expressly identified that the Quote's terms and conditions were incorporated into the contract. Beacon Point did not do so. Instead, Beacon Point accepted a contract that references the Quote but does not clearly communicate that the purpose of the reference was to incorporate the Quote's terms into the contract. Thus, we hold that the contract does not incorporate by reference Beacon Point's Quote.

*Beacon Point*, 139 F.4th at 1310–11. Based on *Beacon Point* and because the Contract is unambiguous, plaintiff's argument regarding a conflict between FAR provisions granting discretion to the government to exercise options and plaintiff's Quote requiring the government to exercise options fails.

In summary, the Court finds plaintiff's Quote is not incorporated by reference in the parties' Contract for four reasons. *First*, the Contract does not explicitly incorporate plaintiffs' Quote, nor does the Contract clearly communicate an intent to incorporate the Quote. *See* Section IV.A, *supra. Second*, the Certificate of Acceptance, moreover, is not part of the Contract, and even if it were, the Certificate of Acceptance was neither executed by plaintiff nor does it clearly communicate an intent to incorporate by reference plaintiffs' Quote. *See* Section IV.B, *supra. Third*, FAR provisions explicitly provide the government with the discretion to exercise an option. *See* Section IV.C, *supra. Finally*, the Contract is not ambiguous, vitiating plaintiff's argument FAR provisions conflicts with the Contract and portions of the Quote plaintiff purports are incorporated into the Contract. *See* Section IV.D, *supra.* Given plaintiff agreed at oral argument for Counts 1, 2, and 3 of the Complaint "the [C]ourt would have to find that [plaintiff's] quote was binding and incorporated into the contract" for those claims to survive, *see* Tr. at 66:20–24, because the Court concludes plaintiff's Quote was not incorporated into the Contract, *see* Section IV.A–D, *supra*, Counts 1, 2, and 3 of plaintiff's Complaint fail. *See Beacon Point*, 139 F.4th at 1310–11.

## V. Whether Plaintiff's Interpretation of the Contract Requiring the Government to Exercise All Renewal Options Would Violate the Anti-Deficiency Act

The Court next determines whether plaintiff's interpretation of the Contract as requiring the government to exercise its option for all additional performance years would violate the ADA. "The Anti–Deficiency Act bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." *Hercules Inc. v. United States*, 516 U.S. 417, 427 (1996). The government argues even if the Contract did require the government to exercise all the options for additional performance years, such a requirement would be void because it would commit the government to expenditures beyond its yearly appropriations in violation of the ADA, 31 U.S.C. § 1341. *See* Gov't's MTD at 6–12. Plaintiff responds the legislative history of the ADA shows it should not be applicable in this case because, according to *Northrop Grumman Computing Systems, Inc. v. United States*, "some forms of binding options or multiyear contracts have been held not to violate [the ADA]." Pl.'s Resp. at 15–21 (quoting *Northrop Grumman Computing Sys., Inc. v. United States*, 93 Fed. Cl. 144, 150 (2010)). At oral argument, plaintiff agreed the government could not bind itself to contract which "specifies a five-year term [where] the government will pay every year, but if they don't get an appropriation, the contract will terminate." Tr. at 73:9–20; *see also* Tr. at 78:4–6 ("THE COURT: But what it sounds like you're saying is that auto-renew is not allowed. [PLAINTIFF]: That's true."). The difference here, plaintiff argues, is the Contract does not condition the additional years solely on the availability of funding; rather, the Contract requires the government to take an "affirmative act"—exercising the options—to extend the contract if appropriations were granted to do so. *See* Tr. at 79:22–80:1 ("THE COURT: It sure sounds like an auto-renew. [PLAINTIFF]: But it's not. They have to take the affirmative action. They have to exercise the option."). The government is thus, in plaintiff's view, not obligated to *continue* the contract subject to the availability of appropriations; it is obligated to *exercise* the option subject to the availability of appropriations. *See id.* In other words, plaintiff contends the contract does not *auto-renew* contingent on appropriations; it simply requires the government *to renew* the Contract contingent on appropriations. *See id.*

Plaintiff's argument, though formalistically attractive, is a distinction without a difference. Whether the government obligates itself to a 5-year commitment or agrees it must obligate itself to five 1-year commitments, the practical effect is the government will be obligated for five years. This would also create an end-run around *Leiter* and *Goodyear*. Under *Leiter* and *Goodyear*, when the contract is signed under authority of an appropriation for only one year, a five-year commitment violates the ADA. *See Leiter v. United States*, 271 U.S. 204, 207 (1926)[5]; *Goodyear v. United States*, 276 U.S. 287, 292–93 (1928)[6]. Both cases held the government cannot bind itself to an obligation before an appropriation exists to meet the obligation. *See id*. Once a new appropriation has been granted by Congress, the government may extend an existing contract by exercising an option or modifying the contract, but only if the government affirmatively acts to continue the contract, and the act must demonstrate an "*intention* to continue." *Goodyear*, 276 U.S. at 293 (emphasis added). Conditioning the government's obligation on the availability of appropriated funds cannot resolve the ADA problem, because the government must affirmatively act to extend the contract, "thereby, in effect . . . making a new [contract] under the authority of such appropriation for the subsequent year." *Leiter*, 271 U.S. at 208. If the government were to bind itself to a multi-year series of 1-year commitments, then it becomes bound to each of those commitments regardless of its "intention" or not to continue the contract. To be sure, the government is free, once a new appropriation is granted, to *choose* to bind itself to another obligation running the appropriation's term "thereby, in effect . . . making a new [contract]." *Id.* The government is *not* free to pre-obligate itself to extend a contract term beyond an existing appropriation, even if that pre-obligation is contingent on a new appropriation being granted. *See Goodyear*, 276 U.S. at 292–93. Here, plaintiff's argument necessitates the government pre-obligating itself to four additional years beyond the one year it received appropriations for. Without new appropriations for each option year of the Contract, plaintiff's interpretation of the Contract (which obligates the government to exercise every additional option year if it receives an appropriation to do so) violates the ADA. *See id.*; *Leiter*, 271 U.S. at 208; *see also Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed. Cir. 2008) (holding an implied-in-fact open-ended indemnification warranty unenforceable because "the contracting officer had no authority to

---

[5] In *Leiter v. United States*, the Supreme Court held invalid a lease contract which provided "the term of occupancy should extend . . . 'contingent upon' the making available by Congress of appropriations out of which the rent might be paid after the current fiscal year." 271 U.S. 204, 205 (1926). Although Congress had appropriated sufficient funds to extend the lease, the Court still held the lease violated the ADA because a contract "entered into under an appropriation available for but one fiscal year, is binding on the Government only for that year." *Id.* at 207. To extend any contract, an "appropriation [must] be made available" and "the Government, by its duly authorized officers, [must] affirmatively continue the [contract] for such subsequent year; thereby, in effect, by the adoption of the original [contract], making a new [contract] under the authority of such appropriation for the subsequent year." *Id.*

[6] The Supreme Court reaffirmed the principles of *Leiter* in *Goodyear v. United States* and held the United States was not obligated to pay for any additional years under a lease agreement because the government has not "expressly or impliedly" continued the lease, and no appropriations for the full term of the lease were made. *Goodyear v. United States*, 276 U.S. 287, 292–93 (1928). There, the government entered into a lease agreement for a 5-year term under an appropriation for only the first year. *Id.* at 290–91. After two years, the government notified the lessor it intended to vacate the property before the third year, but held over into the third year and refused to pay for any time where the government did not actually occupy the property. *Id.* Despite the government holding over the property beyond the initial lease term—which under applicable state law would bind a tenant to another yearlong lease—the Supreme Court held without an affirmative act by the government demonstrating "intention to continue the lease for the entire year," the government could not be "bound for the longer term." *Id.* at 293.

enter into an open-ended indemnity agreement" under the ADA, so "there could be no mutual intent to contract").

In further support of its argument, plaintiff cites to this court's opinion in *Northrop Grumman Comp. Systems Inc.* which opined "some forms of binding options or multiyear contracts have been held not to violate [the ADA]." Pl.'s Resp. at 15 (quoting *Northrop Grumman Comp. Sys., Inc. v. United States*, 93 Fed. Cl. 144 (2010)). Plaintiff's citation to *Northrop Grumman*, however, is unavailing for four reasons. First, the Court notes this case is not binding on the Court. Second, the *Northrop Grumman*[7] decision cited no precedential authority for its opinion some binding options may survive under the ADA, citing only from this court and its predecessor, and thus did nothing to confront or distinguish *Leiter* or *Goodyear*. *See id.* at 150. Third, even the three nonbinding cases it does cite in its opinion do not support plaintiff's argument. For example, in *Cray Research v. United States*, this court expressly held "a multi-year contract violates the Antideficiency Act *unless* the government retains the option to renew the contract each year after the base year," and construed the contract there to make the options nonbinding because it would violate the ADA otherwise. 44 Fed. Cl. 327, 333 (1999). In *RCS Enterprises v. United States*, this court again expressly held the contract there, "on its face, violates the ADA" because the contract purported to bind the government to exercise options to extend the contract by two years. 57 Fed. Cl. 590, 594 (2003). Lastly, in *Solar Turbines International v. United States*, the predecessor to the Court of Federal Claims, the Claims Court, held the government could not be held liable for cancellation costs related to "best estimated quantities" in a requirements contract, in part because doing so would violate the ADA. 3 Cl. Ct. 489, 494–95 (1983). None of the three cases endorsed multi-year contracts requiring the government to exercise an option extending beyond the base year conditioned only on receiving congressional appropriations to do so, as plaintiff argues here. All of these cases, however, do forbid—based on the ADA—contracts purporting to bind the government to exercise options for years where Congress has not yet designated appropriations. Accordingly, plaintiff's invocation of *Northrop Grumman Comp. Sys.* does not alter the Court's conclusion.

In summary, the downstream implications of plaintiff's interpretation of the Contract violate the ADA. Plaintiff's interpretation rests on its contention its Quote is incorporated into the Contract—which is incorrect, as the Court concluded in Section IV, *supra*. Assuming plaintiff's interpretation was correct, *arguendo*, the Quote's incorporation into the Contract purports to obligate the government to exercise all option years. If this were true, plaintiff's interpretation would mean the Contract binds the government to exercise options for years where Congress has not yet designated appropriations. As a contract purporting to bind the government to obligations in future years before receiving congressional appropriations violates the ADA, *see Leiter*, 271 U.S. at 208, *Goodyear*, 276 U.S. at 292–93, under plaintiff's interpretation, the government would have lacked authority to enter an agreement and would not have "creat[ed]

---

[7] In *Northrop Grumman*, this court addressed cross-motions for summary judgment where plaintiff alleged the Department of Homeland Security ("DHS") breached a software lease agreement by declining to extend the agreement via option after DHS agreed to use "best efforts" to obtain funding to exercise the options. *Northrop Grumman,* 93 Fed. Cl. at 149–50. This court held "genuine issues of material fact exist as to whether the leasing terms impose limitations on defendant's right not to exercise an option" and denied the cross-motions. *Id.* at 150. Thereafter, the government filed a motion to dismiss for lack of jurisdiction, and the court did not re-address the issues involved in the original summary judgment order.

any binding obligation after the first year." *See Leiter*, 271 U.S. at 208; *Goodyear*, 276 U.S. at 292–93; *Rick's Mushroom*, 521 F.3d at 1346. Accordingly, even if the government were required under the Contract to exercise the option years, such a requirement is not enforceable. *Id.*

## VI. Whether Plaintiff's Remaining Claims for Relief Rely on the Government's Obligation to Exercise the Contract's Option Years

The Court next examines plaintiff's remaining claims for relief—counts 4, 5, 6, and 7—to determine whether each can survive given the Court's conclusion plaintiff's Quote was not incorporated into the Contract.

### A. Count 4: Breach of the Implied Duty of Good Faith and Fair Dealing

Count 4 of the Complaint alleges the government breached the covenant of good faith and fair dealing by using "bait-and-switch" tactics. Compl. ¶¶ 55–56. Plaintiff argues the government made "several false statements" to induce plaintiff to offer better contracting terms because it expected the government "would use and pay for the software over" all additional option years in the Contract, then declined to exercise any of those options. *Id.* The government argues the Contract granted the government discretion whether to exercise its options for additional performance years or not, and there can be no liability for violating the duty of good faith and fair dealing where the contract "expressly permits" a party's conduct. Gov't's MTD at 16–17.

The Federal Circuit instructs "a specific promise must be undermined for the implied duty [of good faith and fair dealing] to be violated." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019). "The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010); *see also BGT Holdings LLC v. United States*, 984 F.3d 1003, 1016 (Fed. Cir. 2020) (holding a party "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits."). Instructively, "what that duty entails depends in part on what that contract promises (or disclaims)." *Id.* at 830 (emphasis omitted). In "bait and switch cases," the government may be liable for damages when "government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract." *See id.* at 829. In cases where "the government has been found to violate the implied duty of good faith and fair dealing," the government first "enters into a contract that awards a significant benefit in exchange for consideration" and then "eliminates or rescinds that contractual provision or benefit through a subsequent action directed at the existing contract." *Id.*

Here, plaintiff alleges the government "entered into, and induced [plaintiff] into affording it favorable terms . . . . to obtain favorable long-term pricing for what the Navy knew—but concealed—was in fact not intended to be a long-term contract." Pl.'s Resp. at 33. In other words, plaintiff alleges the government represented it would exercise all options for additional years—thus granting plaintiff more money—despite never planning to exercise any options for

additional years. *See id.* As explained *supra*, the Contract did not require the government to exercise any of its options; in fact, the Contract expressly stated "the Government *may* require the delivery of the numbered line item, identified in the Schedule as an option item, in the quantity and at the price stated in the Schedule." Compl., Ex. 6 (the Contract) at 16–17. This permissive language shows the Contract permitted the government discretion over whether to exercise its options to extend or not. *See Champagne v. McDonough*, 122 F.4th 1325, 1330 (Fed. Cir. 2024) (explaining that "'May' is a permissive word, not a command," such that its use "conveys some degree of discretion") (internal citations omitted). Given plaintiff's complaint concerns the government's discretion to exercise an option—which is expressly permitted by the Contract—plaintiff "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits." *BGT Holdings*, 984 F.3d at 1016.

Further, the implied duty of good faith and fair dealing cannot "expand a party's contractual duties beyond those in the express contract" and is only violated when a "specific promise" is undermined. *Dobyns*, 915 F.3d at 739. In a bait-and-switch case, the government "reappropriate[s] a[] 'benefit' guaranteed by the contract[]." *Precision Pine & Timber*, 596 F.3d at 829. The government here made no "specific promise" in the contract to extend for any particular number of years because all extensions were only discretionary options. *See* Section IV, *supra*. The government, therefore, could not have "reappropriated a 'benefit' guaranteed by the contract" by declining to exercise its options, because the Contract made no guarantees the options would be exercised. *Id.* (cleaned up); *see also id.* ("We conclude that there was no breach of the government's implied duty of good faith and fair dealing because the Forest Service's actions during these formal consultations . . . did not reappropriate any "benefit" *guaranteed by the contracts*, since the contracts contained no guarantee that the Precision Pine's performance would proceed uninterrupted.") (emphasis added). Given the government was never obligated to extend the Contract for any length of time beyond the base year and the Contract expressly granted the government discretion whether to exercise any of its options, plaintiff's Count 4—breach of the duty of good faith and fair dealing—fails. *See Dobyns*, 915 F.3d at 739 (holding "a specific promise must be undermined for the implied duty [of good faith and fair dealing] to be violated"); *BGT Holdings*, 984 F.3d at 1016 (holding a plaintiff "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits").

### B. Count 5: Breach of the Superior Knowledge Covenant

Count 5 of plaintiff's Complaint alleges the government breached the superior knowledge covenant because the government failed to inform plaintiff it had already identified software to replace the software it procured from plaintiff—which would then have an impact on the Contract's duration—and thus misled plaintiff to believe the Contract would be extended. *See* Compl. ¶ 62. The government argues "[t]he Navy's alleged intentions about procuring replacement software after the base year" could not have violated the superior knowledge covenant because this information "could not possibly have been 'vital' to [plaintiff]'s performance" on the base year of the Contract. Gov't's MTD at 18.

"The superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting

the contract that is vital to its performance." *Scott Timber Co. v. United States*, 692 F.3d 1365, 1373 (Fed. Cir. 2012) (quoting *Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000)). "The doctrine of superior knowledge is generally applied to situations where (1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor or did not put it on notice to inquire, and (4) the government failed to provide the relevant information." *Id.* (quoting *Hercules Inc. v. United States*, 24 F.3d 188, 196 (Fed. Cir. 1994)).

Plaintiff insists information relating to the government's intent to continue the Contract was "vital" to plaintiff's performance of the Contract because "it made it unlikely that the Navy would [] renew the Contract after the base year, and virtually guaranteed that it would not renew for multiple options periods." Pl.'s Resp. at 36; *see* Tr. at 98:21–25 ("[PLAINTIFF]: It is [vital] because . . . we purchased out-of-pocket, five year licenses and extended a discount price based upon the five-year license as opposed to a one-year license, which is substantially less expensive on an annualized basis."). The superior knowledge covenant is only violated if the knowledge allegedly withheld "affects performance costs or duration." *Scott Timber*, 962 F.3d at 1373 (quoting *Hercules*, 24 F.3d at 196). As explained *supra*, the Contract only obligated the parties to perform on the base year of performance, which plaintiff fully performed and was paid for in full. Compl. ¶¶ 18–19. Plaintiff agreed the government's decision to not exercise its option to extend the contract did not "directly" increase plaintiff's cost to perform on the base year, instead arguing not extending the contract reduced its expected return on the Contract. *See* Tr. at 99:9–20. Plaintiff's allegations thus do not establish the allegedly withheld information increased "*performance* costs or duration;" plaintiff's grievance is actually that plaintiff expected the profits of a 5-year deal and only ended up with a 1-year deal. The Contract guaranteed plaintiff no more than the one-year deal—which the parties agree each fully performed—and whether the government planned to exercise its options for further years has no impact on the cost or duration of the base year. Accordingly, given plaintiff's allegations do not establish the government withheld "vital information" which "increased performance costs or duration," plaintiff has failed to state a claim for breach of the superior knowledge covenant, and Count 5 of plaintiff's Complaint fails. *Scott Timber*, 962 F.3d at 1373.

### C. Count 6: Constructive Termination for Convenience

Plaintiff next claims the government constructively terminated the Contract for convenience because the government "had sufficient appropriated funds to renew the Contract" and "pursuant to the Contract, the only way Navy could avoid being in breach of contract is if Navy's action is treated as a termination for convenience." Compl. ¶ 67. The government argues it never "terminated" anything: it simply allowed the Contract to lapse by its own terms after fully performing on the base year, so there could not have been any termination for convenience. *See* Gov't's MTD at 19.

"Constructive termination for convenience is a judge-made doctrine . . . applied when the basis upon which a contract was actually terminated is legally inadequate to justify the action taken." *Maxima Corp. v. United States*, 847 F.2d 1549, 1553 (Fed. Cir. 1988). "[T]he concept of constructive termination for convenience enables the government's actual breach of contract

to be retroactively justified" under a contractual clause permitting termination for the government's convenience. *Id.*

Plaintiff alleges the government constructively terminated the Contract for convenience when it declined to exercise "any of the option years" because this "ran counter to the plain meaning of the Contract and the terms which stated, 'Provided it obtains such sufficient funds, the Government shall exercise all renewal options.'" Pl.'s Resp. at 37 (quoting Compl. ¶ 7). First, as explained in Sections IV and V, *supra*, the terms of plaintiff's Quote were not incorporated into the Contract and therefore any government action supposedly "counter to" those terms is not a breach or termination of the Contract. Next, plaintiff agreed with the government at oral argument a "termination" refers to "an affirmative act by the procuring agency to stop further performance from continuing in accordance with the governing contract." Tr. at 107:10–19; *see also* FAR 52.212-4(l) (defining the government's right to "[t]erminat[e] for the Government's convenience"). Given the government retained discretion whether to exercise its options for additional performance years and was under no contractual obligation to do so, its refusal to extend the Contract did not "stop further performance from continuing in accordance with the governing contract." *See* Compl., Ex. 6 (the Contract) at 16–17 (incorporating a FAR provision stating "[t]he Government may require the delivery of the numbered line item, identified in the schedule as an option item, in the quantity and at the price stated in the Schedule"). Rather, the government fully performed the base year of the Contract and, by not exercising any options, allowed the Contract to lapse according to its own terms. The government thus did not "terminate" anything, constructively or otherwise. Accordingly, in the absence of any termination by the government, plaintiff's allegations—and Count 6 of its Complaint—fail to establish a claim for constructive termination for convenience. *See Maxima Corp.*, 847 F.2d at 1553.

### D. Count 7: Claim for Equitable Adjustment

Plaintiff lastly claims in Count 7 of its Complaint it is entitled to an equitable adjustment because the "Navy's failure to exercise the Option Year 1 renewal option effected a constructive change, in that [plaintiff] had to expend the same amount to acquire the Software from [plaintiff]'s supplier for performance, but Navy no longer had to pay for [plaintiff]'s performance" throughout the full option-year timeline of five years. Compl. ¶ 73. The government argues an equitable adjustment is only permitted where "a change mandated by the procuring agency causes the contractor to incur additional costs;" given the government was never obligated to exercise the options for additional performance years, declining to do so "made no changes to the Contract[]." Gov't's MTD at 20.

The Court first notes despite including specific sections in its response individually defending counts 4, 5, 6, and 7, plaintiff did not respond to any of the government's arguments regarding its purported entitlement to an equitable adjustment in Count 7. *See* Pl.'s Resp. at 33–37. The government argues because its arguments regarding equitable adjustment were not "directly addressed in the response brief . . . those arguments have been waived." Tr. at 103:17–21. Although plaintiff agrees it did not "respond substantively in the brief" to the government's arguments in the motion to dismiss, plaintiff notes it disputed the government's assertion the Contract did not incorporate plaintiff's quote in other sections of the response,

which formed part of the government's argument Count 7 should be dismissed. Tr. at 103:1–9. "A party's failure to raise an argument in an opening or responsive brief constitutes waiver." *Sarro & Assocs., Inc. v. United* States, 152 Fed. Cl. 44, 58 (2021) (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002) (holding an argument raised for the first time in reply is waived)). Given plaintiff's agreement it did not substantively respond to the government's arguments in its response, plaintiff has likely waived the issue altogether. *See id.*

Assuming plaintiff's arguments are not waived, to show entitlement to an equitable adjustment of a government contract, plaintiff must show "liability, causation, and resultant injury." *Servidone Constr. Corp. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991) (citation omitted). Plaintiff must also "prove that the government somehow delayed, accelerated, augmented, or complicated the work, and thereby caused [plaintiff] to incur specific additional costs, and that those costs were reasonable, allowable, and allocable to the contract." *SAB Constr., Inc. v. United States*, 66 Fed. Cl. 77, 84–85 (2005) (emphasis and citation omitted), *aff'd*, 206 F. App'x 992 (Fed. Cir. 2006). Here, plaintiff advances a "constructive change" theory, arguing when the government declined to exercise any of the options for additional years, it effected a constructive change because plaintiff's costs stayed the same but the government no longer had to pay for any of the additional years in the Contract. *See* Compl. ¶¶ 73–74; *see* Tr. at 104:15–23. Plaintiff agreed at oral argument "there must be a constructive change . . . for an equitable adjustment." Tr. at 105:2–4. As explained *supra*, the government was never obligated to exercise any of the options for additional years, and such an obligation would be void as contrary to the ADA. *See* Section V, *supra*. Declining to do something which the government was never obligated to do is not a change, constructive or otherwise, to the Contract. *See* Section VI.C, *supra*. Here, the government met its obligation to pay plaintiff for the base year of performance, then declined its *option* to extend the Contract further. *See* Compl. ¶ 19 ("Navy paid the initial base term payment."), ¶ 21 ("However, Navy did not issue a renewal modification to exercise the first option year."). Considering the government was not obligated to perform anything differently, no change was effected. Given the government made no change to the Contract, plaintiff cannot show liability and thus its claim in Count 7 of its Complaint for an equitable adjustment must be dismissed. *See Servidone*, 931 F.2d at 861 ("To receive an equitable adjustment from the Government, a contractor must show three necessary elements—liability, causation, and resultant injury.").

## VII. Conclusion

For the foregoing reasons, the Court **GRANTS** the government's Motion to Dismiss, ECF No. 9, and **DISMISSES** plaintiff's Complaint. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge